UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER DOUGLAS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN COLVIN, )<br>)<br>Defendant. ) | Case No. 1:14-cv-00680-TWP-MJD |

**ENTRY ON JUDICIAL REVIEW**

Plaintiff, Christopher Lee Douglas ("Mr. Douglas") requests judicial review of the final decision of the Defendant, Carolyn Colvin, Commissioner of Social Security ("the Commissioner"), wherein the Commissioner denied his application for Supplemental Security Income ("SSI") under Subchapter XVI of the Social Security Act ("the Act"). For the reasons stated below, the Court **REVERSES** and **REMANDS** the Commissioner's final decision.

**I. BACKGROUND**

**A.     Procedural History**

On June 10, 2010, Mr. Douglas filed an application for SSI under Subchapter XVI of the Act. *See* 42 U.S.C. § 1382 (2012). (Filing No. 11-2 at 22.) Mr. Douglas alleges disability due to morbid obesity, osteoarthritis of the left knee, and arthritis. (Filing No. 11-2 at 24.) On September 1, 2010, Mr. Douglas' application was denied initially; and, on October 20, 2010, Mr. Douglas' application was denied upon reconsideration. (Filing No. 11-2 at 22.)

Thereafter, on November 28, 2011, an Administrative Law Judge ("ALJ") held a hearing, wherein Mr. Douglas appeared with counsel. (Filing No. 11-2 at 34.) On December 30, 2011, the ALJ issued a decision, concluding that Mr. Douglas was not disabled under the Act. (Filing No.

11-2 at 22-29.) Therein, the ALJ opined that Mr. Douglas retained the Residual Functional Capacity ("RFC") to perform other work that existed in significant numbers in the national economy, including a telephone clerk and a circuit board screener. (Filing No. 11-2 at 28.) On March 24, 2014, the Appeals Council denied Mr. Douglas' request for review, rendering the ALJ's decision the final decision of the Commissioner. (Filing No. 11-2 at 1-5.)

On May 2, 2014, Mr. Douglas filed his Complaint in this Court, requesting judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g)(2012). (Filing No. 1.) On August 18, 2014, Mr. Douglas filed his opening brief. (Filing No. 13.) On November 14, 2014, the Commissioner filed a response brief. (Filing No. 21.) On December 8, 2014, Mr. Douglas filed a reply brief. (Filing No. 26.)

**B.** **Physical Impairments**

At the time of his alleged disability onset Mr. Douglas was twenty-seven years old. He had a twelfth grade education and past work at several pizza restaurants. Mr. Douglas has a life-long history of obesity, ranging anywhere from 300 to 540 pounds. (Filing No. 11-2 at 39); (Filing No. 11-6 at 8); (Filing No. 11-7 at 7, 28, 32-33, 35, 54); (Filing No. 11-8 at 4, 13, 32, 37.) He also has an extensive history of treatment for knee problems.

On March 17, 2005, Mr. Douglas sought treatment with David S. Brokaw, M.D. ("Dr. Brokaw"), for a knee injury that he sustained while working as a dishwasher. (Filing No. 11-8 at 24.) Mr. Douglas received steroid injections, an anti-inflammatory, work-restrictions, and immobilization; but he continued to have pain, despite conservative treatment. (Filing No. 11-8 at 13.) Accordingly, on August 26, 2005, Dr. Brokaw performed arthroscopic surgery on Mr. Douglas' left knee. *Id*.

On February 28, 2010, Mr. Douglas slipped on the ice and twisted his knee. (Filing No. 11-7 at 6.) Mr. Douglas went to the emergency room, using crutches. *Id.* An x-ray showed no fracture, dislocation, or radiographically significant joint pathology. (Filing No. 11-7 at 7.) The attending physician noted diminished range of motion in the right knee, diagnosed a knee sprain, and prescribed an immobilizer. (Filing No. 11-7 at 7.) Mr. Douglas was discharged with instructions to use his crutches. (Filing No. 11-7 at 11.)

On March 1, 2010, Mr. Douglas went to a different emergency department for continuing problems related to his fall. (Filing No. 11-7 at 22.) A second x-ray similarly appeared normal. (Filing No. 11-7 at 27.) The attending physician diagnosed a knee strain and opined that Mr. Douglas might have a meniscal injury and prescribed an immobilizer. (Filing No. 11-7 at 23-24.)

On June 30, 2010, Mr. Douglas saw Raymond Peters, M.D. ("Dr. Peters"), for ongoing knee pain. (Filing No. 11-7 at 28.) Dr. Peters diagnosed a left-knee injury and morbid obesity. *Id.* Dr. Peters prescribed narcotic pain medication. *Id.*

On August 23, 2010, Mr. Douglas underwent a consultative examination with Eric Levine, M.D. ("Dr. Levine") who noted Mr. Douglas' left knee problems, back problems, and severe obesity. (Filing No. 11-7 at 53-56.) Dr. Levine noted a reduced range of motion in Mr. Douglas' lumbar spine, hip, left knee, and left ankle. (Filing No. 11-7 at 56.) In addition, Dr. Levine observed that Mr. Douglas could not walk on his heels and toes or in tandem due to his left-knee pain and obesity, and that Mr. Douglas had a sensory abnormality in his left foot. (Filing No. 11-7 at 55.) Further, Dr. Levine noted that Mr. Douglas could ambulate with slow sustainable antalgic gait without the use of an assistive device for at least thirty yards. *Id.*

On October 19, 2010, state-agency physician, J. V. Corcoran, M.D., ("Dr. Corcoran"), reviewed an assessment of Mr. Douglas' conditions and affirmed the findings. (Filing No. 11-7 at

3

57.) However, the prior assessment is not included anywhere in the record.[1] Further, beyond affirming the prior assessment, Dr. Corcoran's assessment provided no opinions regarding Mr. Douglas' specific limitations or abilities. *Id.*

On March 10, 2011, Mr. Douglas visited Mark Stevens, M.D., ("Dr. Stevens"), for knee pain. (Filing No. 11-8 at 4.) Dr. Stevens noted that Mr. Douglas' left knee x-ray was normal and that, while he had some crepitation in his left knee, his range of motion was normal. *Id.* Additionally, in March, 2011, Mr. Douglas started attending physical therapy for his left knee. (Filing No. 11-7 at 63-64.) Another x-ray of his left knee showed mild degenerative changes in the lateral compartment. (Filing No. 11-8 at 3.)

On April 7, 2011, Mr. Douglas told Dr. Stevens that his left knee still hurt a lot. (Filing No. 11-8 at 2.) Given Mr. Douglas' obesity, Dr. Stevens did not know if there was effusion in the left knee, but he noted that Mr. Douglas had patellofemoral crepitation and pain with patellofemoral compression. *Id.* Dr. Stevens injected steroids and pain medication into Mr. Douglas' left knee and referred Mr. Douglas to Dr. Brokaw for a follow-up evaluation of his knee condition. *Id.*

On April 7, 2011, Mr. Douglas returned to Dr. Brokaw with complaints of left knee pain and stated that physical therapy and injections had not helped (Filing No. 11-8 at 36.) *Id.* On examination, Dr. Brokaw found morbid obesity; recurvatum valgus knees; good ranges of motion in his knees; some peripatellar tenderness; and some mild tenderness in the lateral joint line. (Filing No. 11-8 at 37.) Dr. Brokaw stated that surgery was not a safe option; recommended weight

---

[1] The Commissioner contends that Dr. Corcoran affirmed a RFC assessment created by non-examining state agency physician, Dr. Neal. The Commissioner attempted to include Dr. Neal's assessment as part of this appeal. However, this Court struck the assessment, as it was not part of the record at the time the ALJ made his determination. (Filing No. 29.)

loss and consideration of bariatric surgery; and prescribed a cane, anti-inflammatory medication, and physical therapy. (Filing No. 11-8 at 37-38.) Finally, Dr. Brokaw concluded that there was "not much more we can do safely other than conservative care. He will have [his] current knee problems if he stays at [his] current weight. He may require long-term wheelchair mobilization." (Filing No. 11-8 at 38.)

On August 9, 2011, Mr. Douglas returned to Dr. Brokaw and stated that he was continuing to have significant discomfort in his left knee. (Filing No. 11-8 at 32-33.) Dr. Brokaw discussed with Mr. Douglas the role that obesity played in his knee condition, recommended weight loss and opined that surgery was not an option for Mr. Douglas because of his morbid obesity. *Id.*

On November 1, 2011, Dr. Peters completed a RFC assessment regarding Mr. Douglas' functional limitations. Specifically, Dr. Peters opined that Mr. Douglas could sit for thirty minutes at a time and for six hours per workday; could stand for fifteen minutes at a time and for two hours per workday; could occasionally lift twenty pounds and frequently lift ten pounds; could occasionally stoop, bend, and balance; had mild pain; and would miss about three days of work per month due to his impairments or treatment. (Filing No. 11-8 at 29.) On December 9, 2011, Dr. Peters clarified that his opinion regarding the amount of work Mr. Douglas would miss in a month was his "best guess" based on his interview and examination of Mr. Douglas. (Filing No. 11-8 at 30.)

C.  **Mr. Douglas' Testimony**

In November 2011, Mr. Douglas testified with counsel before the ALJ. Mr. Douglas stated that he began using a cane in April 2011, and that the cane was prescribed by Dr. Brokaw. (Filing No. 11-2 at 44.) He testified that he used his cane about 35-40 percent of the time to prevent falling when his knee "gives out". (Filing No. 11-2 at 45.) Mr. Douglas further stated that his left

knee gave out about twice a week. He explained that when his left knee gave out and caused him to fall, he would see his doctor. (Filing No. 11-2 at 66-67.)

Mr. Douglas testified that he could walk a block slowly with his cane and about two or three yards without his cane (Filing No. 11-2 at 49); could stand for about ten minutes with his cane and only two minutes without his cane (Filing No. 11-2 at 50); could sit for thirty minutes at a time after which he would need to walk around for five or ten minutes (Filing No. 11-2 at 49-50); could lift fifteen pounds (Filing No. 11-2 at 48-49); and could carry fifteen pounds across a room (Filing No. 11-2 at 49).

D.  **Medical Expert's Testimony**

At the hearing before the ALJ, medical expert, Sheldon Slodki, M.D., ("Dr. Slodki") testified regarding Mr. Douglas' limitations and abilities. (Filing No. 11-2 at 57-63.) When asked about Dr. Peters' opinion regarding Mr. Douglas' additional limitation of missing three days of work a month, Dr. Slodki stated that he was not sure how Dr. Peters made that opinion. (Filing No. 11-2 at 60.) When asked whether he agreed with the opinion, Dr. Slodki testified that he did not have a way to evaluate Dr. Peters' opinion. (*Id*.) However, upon cross examination, Dr. Slodki also testified that he "couldn't find a way to disagree with it either." (Filing No. 11-2 at 62.) When asked whether he thought Mr. Douglas needed a cane, Dr. Slodki stated that use of a cane is common for people with similarly high body mass index and lower extremity problems. (Filing No. 11-2 at 61.)

E.  **ALJ's Decision**

In his opinion, the ALJ found that Mr. Douglas had not engaged in substantial gainful activity since June 10, 2010, the alleged onset date. (Filing No. 11-2 at 24.) The ALJ concluded that Mr. Douglas had severe impairments but that his impairments did not, singly or in

6

combination, meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. (Filing No. 11-2 at 25.)

Thereafter, the ALJ found that Mr. Douglas had the RFC to perform sedentary work. (Filing No. 11-2 at 25.) In making his RFC finding, the ALJ discounted Mr. Douglas' credibility, noting "there is no mention in the record of any doctor prescribing [Douglas] a cane." (Filing No. 11-2 at 27.) Further, when assessing the medical opinion evidence, the ALJ stated that Dr. Corcoran found that Mr. Douglas could perform "sedentary exertional level" and afforded the opinion "some weight". (Filing No. 11-2 at 27.) In addition, the ALJ characterized Dr. Slodki's testimony as "agree[ing] with Dr. Peters' limitations with the exception of missing work three days a month, and not[ing] that he could not say how Dr. Peters determined that the claimant would miss three days of work per month." (*Id.*) Based on this characterization of Dr. Slodki's testimony, the ALJ gave Dr. Slodki's opinions "significant weight" and adopted many of Dr. Slodki's assessments regarding Mr. Douglas' limitations and abilities into his RFC determination. (Filing No. 11-2 at 25.)

While the ALJ determined that Mr. Douglas had no past relevant work, the ALJ concluded, based on this RFC and the Vocational Expert's testimony, that Mr. Douglas could still perform a significant number of jobs in the national economy, specifically as a telephone clerk and circuit board screener. (Filing No. 11-2 at 28.) As a result, the ALJ determined that Mr. Douglas was not disabled. (Filing No. 11-2 at 29.)

## II. LEGAL STANDARD

**A.      Disability Determination**

Under the Act, a claimant is entitled to Disability Insurance Benefits ("DIB") or SSI if he establishes he has a disability.[2] 42 U.S.C. §§ 423(a)(1)(E), 1382 (2012). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A), 1382c(a)(3)(A) (2012). To justify a finding of disability, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If disability status can be determined at any step in the sequence, an application will not be reviewed further. *Id*. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c).

---

2 The regulations governing the determination of disability for Disability Insurance Benefits are found at 20 C.F.R. 401.1501 *et seq.*, while the Supplemental Security Income regulations are set forth at 20 C.F.R. 416.901 *et seq.* In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. *Compare, e.g.*, 20 C.F.R. § 404.1520, with 20 C.F.R. § 416.920. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

At step three of the sequential analysis, the ALJ must determine whether the claimant's impairment or combination of impairments meets or equals the criteria for any of the conditions included in 20 C.F.R. Part 404, Subpart P, App'x 1 (the "Listings").  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1.  The listings are medical conditions defined by criteria that the Social Security Administration has pre-determined to be disabling.  *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); 20 C.F.R. §§ 404.1525(a), 416.925(a).  *See also* 20 C.F.R. Pt. 404, Subpart P, App'x 1.  For each listing, there are objective medical findings and other findings that must be met or medically equaled to satisfy the criteria of that listing.  20 C.F.R. §§ 404.1525(c)(2)-(5), 416.925(c)(2)-(5).

If the claimant's impairments do not meet or medically equal a listing, then the ALJ assesses the claimant's RFC for use at steps four and five.  20 C.F.R. §§ 404.1520(e), 416.920(a)(4)(iv).  Residual functional capacity is the "maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.945(a)(1).

At step four, if the claimant is able to perform his past relevant work, he is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At step five, the ALJ determines whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  *See also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012).  The claimant is not disabled if he can perform any other work in the relevant economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (2012).  The combined effect of all of a claimant's impairments shall be considered throughout the disability determination process.  42 U.S.C. §§ 423(d)(2)(B); 1382c(a)(3)(G) (2012).  The burden

of proof is on the claimant for the first four steps; it then shifts to the Commissioner at the fifth step. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**B.     Review of the Commissioner's Final Decision**

When the Appeals Council denies review, the ALJ's ruling becomes the final decision of the Commissioner. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009); *Hendersen v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). Thereafter, in its review, the district court will affirm the Commissioner's findings of fact if they are supported by substantial evidence. 42 U.S.C. § 405(g)(2012); *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008); *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dixon*, 270 F.3d at 1176; *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). *See also Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (Substantial evidence must be "more than a scintilla but may be less than a preponderance.").

In this substantial-evidence determination, the district court does not decide the facts anew, re-weigh the evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008); *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Accordingly, if the Commissioner's decision is adequately supported and reasonable minds could differ about the disability status of the claimant, the court must affirm the decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

Ultimately, the sufficiency of the ALJ's articulation aids the court in its review of whether the Commissioner's final decision was supported by substantial evidence. *See Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985) ("The ALJ's opinion is important not in its own

right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do."). While, the ALJ need not evaluate every piece of testimony and evidence submitted in writing, the ALJ's decision must, nevertheless, be based upon consideration of all the relevant evidence. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). In this vein, the ALJ may not discuss only that evidence that favors his ultimate conclusion but must confront evidence that contradicts his conclusion and explain why the evidence was rejected. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

Further, the ALJ's decision must adequately demonstrate the path of reasoning, and the evidence must lead logically to the ALJ's conclusion. *Terry*, 580 F.3d at 475; *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). Indeed, to affirm the Commissioner's final decision, "the ALJ must build an accurate and logical bridge from the evidence to [his] conclusion." *Zurawski v. Halter*, 245 F.3d 881, 888–89 (7th Cir. 2001); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

### III. DISCUSSION

Mr. Douglas primarily argues that the Appeals Council erred in not considering new and material evidence regarding his cane prescription. In particular, Mr. Douglas asserts that he submitted proof of his cane prescription to the Appeals Council which, had it been properly accepted and evaluated, would have shown that the ALJ's credibility and RFC decisions were contrary to the weight of evidence. In addition, Mr. Douglas alleges that the ALJ made his disability determination without a careful review of the record evidence. Specifically, Mr. Douglas contends that the ALJ improperly relied on Dr. Corcoran's review of an RFC assessment that was not included in the record, and that the ALJ improperly relied on Dr. Slodki's inadequately explained dismissal of Dr. Peters' RFC assessment.

**A.      The Appeals Council committed an error of law by not considering and evaluating Douglas' evidence of a cane prescription.**

Mr. Douglas argues that the Appeals Council erred in not considering new and material evidence regarding his cane prescription. This Court agrees.

At the hearing before the ALJ, Mr. Douglas testified that Dr. Brokaw prescribed the use of a cane and that, without the cane, Mr. Douglas was significantly limited in his abilities to stand and walk. (Filing No. 11-2 at 44.) However, Mr. Douglas admits that, at the time of the ALJ's hearing, corroborating evidence of his cane prescription was not in the record. (Filing No. 13 at 13.) Nevertheless, Mr. Douglas indicates that he presented sufficient corroborating evidence to the Appeals Council, following the ALJ's decision. (Filing No. 13 at 7.) In particular, Mr. Douglas identifies a cane prescription, signed by Dr. Brokaw and dated April 21, 2011 (Filing No. 11-8 at 31); and four of Dr. Brokaw's treatment notes, dated April 21, May 31, and Aug 9, 2011, wherein Mr. Douglas' cane use is further documented. (Filing No. 13 at 7, 13; Filing No. 11-8 at 32-40.) The record reflects, this evidence was received by the Appeals Council and was made a part of the record, pursuant to the Appeals Council decision to deny review. (Filing No. 11-2 at 6.)

Mr. Douglas argues that, although the Appeals Council made the additional evidence a part of the record, the Appeals Council erred in refusing to consider and evaluate the new evidence. Mr. Douglas contends that, had the Appeals Council properly assessed the new evidence, the Appeals Council should have concluded that the ALJ's decision regarding Mr. Douglas' credibility and the ALJ's RFC decision were contrary to the weight of evidence.

The Social Security Administration has well-established procedures for submitting and reviewing newly discovered evidence to the Appeals Council.[3]  *See* 20 C.F.R. §§ 404.970(b),

---

3 In addition, this Court notes that it can, on its own accord, remand a case for review of new and material evidence, if this Court determines that there was good cause for not incorporating the evidence in a prior proceeding. 42 U.S.C. § 405(g) (2012); *Eads v. Sec'y of Health and Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993).

12

416.1470(b); Social Security Admin., Office of Hearing and Appeals, *Hearings, Appeals and Litigation Law Manual (HALLEX)*, I-3-3-6, I-3-5-20; *Farrell v. Astrue*, 692 F.3d 767, 770-72 (7th Cir. 2012); *Perkins v. Chater*, 107 F.3d 1290, 1293-94 (7th Cir. 1997). The relevant regulation, concerning newly discovered evidence, reads as follows,

> In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. In reviewing decisions other than those based on an application for benefits, the Appeals Council shall evaluate the entire record including any new and material evidence submitted. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 416.1470(b). *See also* 20 C.F.R. § 404.970(b) (using nearly identical language for DIB appeals), *HALLEX*, I-3-3-6, I-3-5-20. The Seventh Circuit has repeatedly explained that this court reviews whether the Appeals Council made an error of law in applying this regulation *de novo*. *See, e.g.*, *Farrell*, 692 F.3d at 771; *Perkins*, 107 F.3d at 1294.

This case appears to be "on all fours" with the facts in *Farrell*. 692 F.3d at 770-72. In *Farrell*, the ALJ determined that the claimant had no evidence to confirm a diagnosis of fibromyalgia, affecting the ALJ's conclusions regarding the claimant's severe impairments and the claimant's RFC. *Id*. Thereafter, the claimant produced confirmation of the diagnosis to the Appeals Council, which summarily denied the claimant's application, stating that it had "considered the additional evidence and found that this information does not provide a basis for changing the [ALJ's] decision." *Id*. at 770-71 (internal citations omitted). Under these facts, the *Farrell* court concluded that the Appeals Council had committed an error of law in its application of the regulation. *Id*. at 771. In so concluding, the court opined that the claimant's evidence was "new" because it was not part of the administrative record at the time of the claimant's appeal to the Council, and that the evidence was unquestionably "material" because it "fill[ed] in the

13

evidentiary gap" in the ALJ's decision regarding the claimant's fibromyalgia diagnosis. *Id*. Further, the court found that the Appeals Council's failure to consider the new evidence was harmful error because the missing evidence directly impacted the ALJ's severity and RFC determinations. *Id*. at 772.

Similarly, the ALJ's opinion in Mr. Douglas' case rests heavily on the lack of corroborating testimony that Mr. Douglas was, in fact, diagnosed with a cane. In particular, when discounting Mr. Douglas' testimony that he was severely restricted in his ability to stand or walk without a cane, the ALJ noted, "there is no mention in the record of any doctor prescribing [Douglas] a cane." (Filing No. 11-2 at 27.) As a result, the ALJ went on to conclude that a less restrictive RFC was more consistent with the medical opinions in the record and that, as a result, Mr. Douglas could perform a number of sedentary jobs. (Filing No. 11-2 at 27-28.)

After the ALJ's negative disability determination, Mr. Douglas submitted confirmation of his cane diagnosis, in the form of a prescription and treatment notes from the relevant time period, to the Appeals Council. (*See* Filing No. 13 at 7; Filing No. 11-8 at 31-40.) While noting that it made Mr. Douglas' "additional evidence" part of the record (Filing No. 11-2 at 6), the Appeals Council summarily denied review in language identical to the *Farrell* case (Filing No. 11-2 at 2-3) ("we considered . . . the additional evidence . . . [and] found that this information does not provide a basis for changing the [ALJ's] decision.")[4]

Because Mr. Douglas' facts are identical to *Farrell*, this Court considers an identical analysis to be appropriate, if not mandated. As was the case in *Farrell*, the evidence that Mr.

---

4 Additionally, HALLEX requires the Appeals Council to explain why evidence submitted for the first time to the Appeals Council was considered either not new or not material by the Council. *See* Social Security Admin., Office of Hearing and Appeals, *Hearings, Appeals and Litigation Law Manual (HALLEX)*, I-3-5-20. Neither explanation is plainly apparent on the face of the Appeals Council's decision to deny review in Mr. Douglas' case. Instead, the Appeals Council provides only perfunctory language that "the information does not provide a basis for changing the [ALJ's] decision".

14

Douglas submitted to the Appeals Council related to the appropriate time period, before the ALJ's decision, and was new to the administrative record at the time of Mr. Douglas' application to the Appeals Council. Further, also similar to *Farrell*, the evidence that Mr. Douglas submitted was unquestionably material, as the ALJ's credibility and RFC determinations "unequivocally" rested on the ALJ's conclusion that there was "no mention in the record of any doctor prescribing [Douglas] a cane." Accordingly, similar to *Farrell*, this Court concludes that Mr. Douglas submitted "new and material" evidence that the Appeals Council improperly failed to consider. *Cf. Farrell*, 692 F.3d at 770-72.

Further, as was the case in *Farrell*, the error was "not harmless." As already explained, the ALJ based his RFC determination, in significant part, on his rejection of Mr. Douglas' testimony that he was significantly restricted in his ability to stand and walk. The ALJ's rejection of this testimony was clearly grounded on the lack of a cane prescription in the record at the time of the ALJ's decision. Given the unquestionable materiality of Mr. Douglas' newly-submitted evidence and its actual impact on the ALJ's negative disability determination, this Court cannot determine how the Appeal Council came to the conclusion that the ALJ's decision was not "contrary to the weight of evidence in the record". *Id.*

Accordingly, because the Appeals Council committed an error of law in failing to consider and evaluate the newly submitted evidence, remand is necessary for the ALJ to consider the evidence that Mr. Douglas was, indeed, diagnosed with a cane during relevant time period, and for the ALJ to re-examine his credibility, RFC, and Step 5 conclusions in light of the new evidence.

**B.     The ALJ's decision is not supported by the record evidence.**

Mr. Douglas additionally argues that the ALJ made his disability determination without a careful review of the record evidence. Specifically, Mr. Douglas contends that the ALJ improperly

15

relied on Dr. Corcoran's review of an RFC assessment that was not included in the record, and that the ALJ improperly relied on Dr. Slodki's inadequately explained dismissal of Dr. Peters' RFC assessment. This Court agrees that remand is additionally appropriate for both reasons.

      **1.      Dr. Corcoran's Assessment**

The assessment of state agency reviewing physician, Dr. Corcoran, makes up only one page of the entire administrative record. (Filing No. 11-7 at 57.) In it, Dr. Corcoran checked a box that he reviewed an assessment from September 1, 2010, and that he affirmed the prior assessment as written. (*Id*.) Dr. Corcoran did not articulate the conclusions of the prior assessment or explain the reasons that he agreed with the conclusions therein, except to list a number of reasons that Mr. Douglas' treatment and prognosis had not changed since the prior assessment. (*Id*.) Indeed, beyond merely stating that he affirmed the prior assessment, Dr. Corcoran's assessment provided no opinions regarding Mr. Douglas' specific limitations or abilities. (*Id*.)

Nevertheless, when assessing the medical opinion evidence, the ALJ inexplicably stated that Dr. Corcoran found that Mr. Douglas could perform "sedentary exertional level" and afforded the "opinion" "some weight". (Filing No. 11-2 at 27.)

It is undisputed that the prior assessment, allegedly made by state agency reviewing physician, Dr. Neal, on September 1, 2010, was not in the record at the time of the ALJ's disability determination. (Filing No. 21 at 10.) In an effort to save the ALJ's opinion, the Commissioner attempted to admit Dr. Neal's prior assessment to this Court, presumably in hopes of justifying the ALJ's decision to give Dr. Corcoran's opinion some weight. However, this Court struck Dr. Neal's assessment because it was not part of the record at the time the ALJ made his decision. (*See* Filing No. 29.)

Indeed, as explained in this Court's order striking Dr. Neal's assessment, this Court is not permitted to consider *post hoc* rationalizations to support the ALJ's decision, as neither the Commissioner nor this Court is permitted to evaluate the claimant's evidence on behalf of the ALJ. *See Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) ("principles of administrative law require the ALJ to rationally articulate the grounds for her decision;" and the Court, therefore, "confines [its] review to the reasons supplied by the ALJ"); *Hendricks v. Astrue*, 1:08-CV-376, 2009 WL 648610 at *8 (S.D. Ind. 2009). Instead, an ALJ's decision on the disability of a claimant must be based upon evidence in the record that was actually before the ALJ at the time of his decision. *See* 20 C.F.R. §§ 404.953(a) ("The [ALJ] must base the decision on the preponderance of the evidence offered at the hearing or otherwise included in the record."), 416.1453(a).

It may ultimately prove true that Dr. Neal's assessment supports the ALJ's conclusion that Douglas can perform work at a sedentary level. However, this Court cannot see how the ALJ reasonably made that conclusion without Dr. Neal's initial assessment in the record. Instead, given the current record, it appears as if the ALJ pulled the opinion out of thin air. Such a determination can neither be held to be sufficiently supported nor adequately articulated. *Cf, Borland v. Astrue*, No. 10-C-92, 2010 WL 5209380, at **7-8 (E.D. Wis. 2010) (remanding on account of the ALJ's RFC determination being impermissibly grounded upon the ALJ's mischaracterization of a physician's opinion). Indeed, because there is nothing in the record to support the ALJ's evaluation of Dr. Corcoran's opinion, this Court is left with grave doubts about the carefulness and thoroughness of the ALJ's assessment of *all* the medical opinion evidence in this case. *Id*. *See also Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (noting that an ALJ's decision cannot stand if it lacks evidentiary support).

As a result, this Court considers remand to be necessary in order for the ALJ to review *all* the opinion evidence, and not just the opinion of Dr. Corcoran, carefully explaining the weight afforded to each opinion and meticulously noting the record evidence that supports his conclusions.

### 2. Dr. Peters and Dr. Slodki's Opinions

Similarly, Mr. Douglas argues that the ALJ failed to explain his reasons for rejecting Dr. Peters' additional limitation that Mr. Douglas would have to miss three days of work each month. Mr. Douglas notes that his treating physician, Dr. Peters, opined that he would likely miss three days of work per month as part of Dr. Peters' RFC assessment. (Filing No. 11-8 at 29.) In his decision, the ALJ rejected this additional limitation based on the ALJ's interpretation of Dr. Slodki's testimony. (Filing No. 11-2 at 27.)

At the hearing, Dr. Slodki stated that he did not know how Dr. Peters determined the additional limitation that Mr. Douglas would likely miss three days of work per month. (Filing No. 11-2 at 60.) When asked specifically whether Dr. Slodki agreed or disagreed with Dr. Peters' additional limitation, Dr. Slodki demurred stating, "you're going to have to give that –whatever weight, I have no way of evaluating Dr. Peters." (*Id.*) Further, upon cross examination, Dr. Slodki also testified that he "couldn't find a way to disagree with [the additional limitation] either." (Filing No. 11-2 at 62.) In his opinion, however, the ALJ characterized Dr. Slodki's testimony as expressly disagreeing with Dr. Peters' additional limitation. (Filing No. 11-2 at 27.) In particular, the ALJ stated "[a]t the hearing, Dr. Slodki agreed with Dr. Peters' limitations *with the exception of missing work three days a month*, and noted that he could not say how Dr. Peters determined [the additional limitation]." (*Id.*)(emphasis added).

Although the ALJ characterized Dr. Slodki's opinion as a clear rejection of Dr. Peters' additional limitation, it is not clear from Dr. Slodki's testimony that Dr. Slodki actually did so. Further, even if this Court were to conclude that Dr. Slodki's testimony did amount to a rejection of the additional limitation, neither Dr. Slodki in his testimony nor the ALJ in his opinion cited specific evidence to justify and explain the reasons for rejecting it.

Indeed, without the requisite articulation, it appears, at worst, that the ALJ may have impermissibly rejected the opinion of Mr. Douglas' treating physician because the opinion did not support the ALJ's desired conclusion. *See Hofslien v. Barnhart*, 439 F.3d 375, 376 (7th Cir. 2006) (A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence"); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); 20 C.F.R. § 404.1527(c)(2). The law is clear that the ALJ may not discuss only that evidence that favors his ultimate conclusion but must confront evidence that contradicts his conclusion and explain why the evidence was rejected. *See Denton v. Astrue*, 596 F.3d 419, 477 (7th Cir. 2010) (noting that the ALJ has an obligation to consider all relevant evidence and cannot "cherry-pick" facts that support a finding of non-disability while ignoring contrary evidence); *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

At best, however, the ALJ needed to better articulate his reasons for rejecting the additional limitation with specific citations to the medical evidence or opinions that supports his conclusions. Without greater explanation, and some evidence to support that decision, this Court cannot determine whether the ALJ's decision was supported by substantial evidence in the record. While the ALJ is not required to evaluate every piece of evidence or testimony in writing, the ALJ's

decision must, nevertheless, be based upon consideration of all the relevant evidence and must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Zurawski v. Halter*, 245 F.3d 881, 888-89 (7th Cir. 2001); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

While the ALJ's evaluation of the opinions of Dr. Peters and Dr. Slodki may appear closer to the line of the amount of articulation necessary, given the concerns raised by the ALJ's severely suspect assessment of Dr. Corcoran's opinion, the Court considers remand to be prudent to allow the ALJ another opportunity to more carefully assess these opinions as well.

Consequently, because this Court concludes that both the Appeals Council and the ALJ erred, this Court considers remand to be necessary in this case.

### IV. **CONCLUSION**

For aforementioned reasons, the Court **REVERSES** and **REMANDS** the Commissioner's final decision. ([Filing No. 1](Filing No. 1).)

**SO ORDERED.**

Date: 9/14/2015

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

J. Frank Hanley, II
jfrankhanley@jfrankhanley.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov